**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LOVELAND TECHNOLOGIES, LLC, d/b/a Regrid,

Plaintiff,

v.

VENDITA AI, LLC,

Defendant.

Case No.

Hon.

/

**COMPLAINT**

Loveland Technologies, LLC, d/b/a Regrid ("Loveland") complains as follows against Defendant Vendita AI, LLC ("Vendita" or "Defendant"):

**THE PARTIES, VENUE, AND JURISDICTION**

1. Loveland is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 440 Burroughs St., Suite 672, Detroit, MI 48202.

2. Loveland's seven members, and their states of citizenship, are as follows: (1) Jerry Paffendorf is a person who is a citizen of the State of Michigan; (2) Mary Paffendorf is a person who is a citizen of the State of Michigan; (3) Lawrence Sheradon is a person who is a citizen of California; (4) Alex Alsup is a person who is a citizen of Michigan; (5) Matt Hampel is a person who is a citizen of Michigan; (6) Robert M. Gorski, Jr. is a person who is a citizen of California;

and (7) Esri International LLC, a limited liability company organized under the laws of the state of Nevada and whose members are Jack Dangermond and Laura Dangermond, both of whom are citizens of California. For purposes of diversity jurisdiction, Loveland is a citizen of Michigan and California.

3. Vendita is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 503 E Jackson St., PMB 254, Tampa, FL 33602. Upon information and belief, Defendant's members are citizens of the State of Florida, and no member of Defendant is a citizen of Michigan or California. For purposes of diversity jurisdiction, Defendant is a citizen of Florida.

4. This Court has subject-matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332 as there is in excess of Seventy-Five Thousand Dollars ($75,000.00) in controversy, exclusive of interest, costs and attorney fees, and there is complete diversity of citizenship among the parties.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Loveland's claims occurred in this district. Venue is also proper in this District because the parties contractually consented to the exclusive jurisdiction and venue of the federal courts located in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

6. Loveland operates a land and parcel location intelligence platform. Loveland's platform consolidates property records into a single data set, containing informational attributes, such as ownership information and zoning regulations. See www.regrid.com.

## The Parties' Written Agreement and Its Amendment

7. On or about September 26, 2024, Loveland and Defendant entered into a written Parcel Data License Agreement ("Agreement"). **Exhibit 1**.

8. Under the Agreement, Loveland granted Defendant a non-exclusive, non-transferable, and non-sublicensable license to access and use Loveland's parcel data ("Data").

9. Unless terminated pursuant to the terms of the Agreement, the Agreement had an initial one-year term and renewed automatically for additional one-year periods for the Fee[1] identified in Schedule A attached to the Agreement. *Id*. at ¶ 6.

10. The Agreement required Defendant to pay Loveland in accordance with the payment terms set forth in its Schedule A. *Id*., at ¶¶ 3, 6.

11. Under Schedule A to the Agreement, Defendant was required to pay $16,000 for the initial year of the Agreement, with an increase of 3% for each

[1] Unless otherwise indicated, capitalized terms have those meanings ascribed to them in the relevant agreements.

subsequent year of the Agreement. *Id*., at Schedule A, ¶ A.

12. Upon termination, the Agreement required Defendant to provide Loveland with a duly executed Certificate of Destruction, in the form attached to the Agreement as Exhibit A. *Id*., at ¶ 6.

13. The Certificate of Destruction would confirm that Defendant "has destroyed all copies of the Data and that the Data is no longer in use in any manner, by [Defendant], its employees, and/or its contractors." *Id*.

14. On or about February 20, 2025, Loveland and Defendant executed a Revised Addendum A to Parcel License Agreement ("Addendum"). **Exhibit 2**.

15. Under the Addendum, the Parties agreed to expand the Territory and that the "Data will cover parcels in the following geographic areas: Nationwide." *Id*., at ¶ 2.

16. The Addendum states: "The Agreement is effective for three (3) years from the Effective Date (the "Term")." *Id*., at ¶ 3.

17. The Addendum also increased Defendant's payment obligations. The Addendum provided that Defendant would pay Loveland a "Fee of $85,000 to Loveland for access to and use of the Data for each year of the Term." Ex. 2, ¶ 4. "For the First year of the Term, a pro-rated credit of $10,000 is applied producing a net Fee due of $75,000." *Id*..

18. Defendant agreed to pay to Loveland the annual Agreement price in three equal installments:

> "The Fee for the first [year] of the Term is due as 3 equal payments with 33% due March 31, 2025, 33% June 30, 2025, and 33% September 30, 2025 and for subsequent years of the term on the anniversary of these dates and shall be paid by wire transfer of immediately available funds to Loveland." *Id.*

## **Defendant's Breaches**

19. Loveland provided Data to Defendant pursuant to the Agreement and any executed Addenda.

20. In accordance with the Addendum, Loveland submitted an invoice to Defendant for the amount of $28,333.33 due on March 31, 2026. **Exhibit 3**.

21. Loveland sent another invoice to Defendant in the amount of $28,333.33 due on June 30, 2026. **Exhibit 4**.

22. Defendant failed to make the payments due to Loveland as required under the Agreement.

23. Despite Defendant's non-payment, Loveland continued providing Data to Defendant under the Agreement.

24. Loveland contacted Defendant multiple times seeking payments due the unpaid invoices under the Agreement. Defendant did not respond or pay.

25. On June 9, 2026, Loveland notified Defendant that it was in breach of the Agreement and provided Defendant ten days to cure its breaches. **Exhibit 5**.

26. Defendant did not pay the past-due invoices and did not cure.

27. On June 24, 2026, Loveland provided written notice to Defendant that the Agreement had been terminated due to Defendant's breaches. **Exhibit 6**.

28. In its June 24, 2026 notice, Loveland requested that Defendant execute and return the contractually required Certificate of Destruction. *Id.*

29. Defendant has not provided to Loveland the required Certificate of Destruction or paid its past-due invoices.

30. Defendant's failures to pay Loveland the amounts due under the Agreement and its failure to provide a Certificate of Destruction constitute material breaches of the Agreement.

31. As a result of Defendant's breaches, Loveland has suffered damages in the amount of at least $170,000, plus continuing damages, interests, costs, and attorneys' fees.

## COUNT I
## BREACH OF CONTRACT

32. Loveland incorporates by reference all of the allegations in the foregoing paragraphs as if fully set forth herein.

33. The Agreement as amended is a valid, binding, and enforceable contract between Loveland and Defendant.

34. Loveland performed its obligations under the Agreement as amended by providing Defendant with Data during the term of the Agreement.

35. Defendant was obligated to pay all amounts required under the Agreement as amended.

36. Defendant breached the Agreement as amended.

37. Defendant's breaches caused Loveland to incur damages, including without limitation the benefit of the remaining contractual payments.

38. Defendant is obligated to pay Loveland the invoiced amounts of $56,666,66, plus remaining contract price in the amount of $113,333.34, for a total of $170,000.00, plus interest and attorney fees.

39. In addition, upon termination of the Agreement, Defendant was obligated to provide to Loveland the required Certificate of Destruction, certifying that Defendant had destroyed all copies of the Data and had ceased using the Data in any manner.

40. Following Defendant's breaches of the Agreement as amended, Loveland requested that Defendant provide the required Certificate of Destruction.

41. Defendant has failed and refused to provide Loveland with the Certificate of Destruction.

42. Defendant has also materially breached the Agreement as amended by failing to provide the required Certificate of Destruction.

43. Defendant's breaches of the Agreement as amended were not justified or excused.

44. As a result of Defendant's breaches, Loveland has suffered damages in an amount no less than $170,000, plus additional amounts proven at trial, pre- and post-judgment interest, contractual interest, costs, and attorneys' fees as allowed under the Agreement and applicable law.

45. In addition, Defendant is required under the Agreement as amended to destroy all copies of Loveland's Data, cease using Loveland's Data, and provide the executed Certificate of Destruction.

**REQUEST FOR RELIEF**

WHEREFORE, Loveland respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

A. Award Loveland damages in the amount of at least $170,000;

B. Enter an order of specific performance requiring Defendant to destroy all copies of Loveland's Data, cease using the Data in any manner, and provide Loveland with the executed Certificate of Destruction;

C. Award pre- and post-judgment interest including contractual interest;

D. Award Loveland its reasonable attorneys' fees, expenses, collection costs, and taxable costs as permitted by the Agreement and applicable law;

E. Award such other and further legal or equitable relief as the Court deems just and proper.

September 24, 2026

Respectfully submitted,

**BODMAN PLC**

By: /s/ *Stephen P. Dunn*
Stephen P. Dunn (P68711)
Donovan S. Asmar (P77951)
201 West Big Beaver Rd., Suite 500
Troy, MI 48084
(248) 743-6000
sdunn@bodmanlaw.com
dasmar@bodmanlaw.com
*Attorneys for Loveland*